LUBLIN v. STEWART, HOWE & MAY CO. et al.

(Circuit Court of Appeals, Third Circuit.    November 20, 1896.)

No. 12, September Term, 1896.

PATENTS—ANTICIPATION—DRESS STAYS.

The Bray patent, No. 440,246, for an improvement in dress stays, was not anticipated by the Curtis patent, No. 243,519, for an improvement in the back of corsets, as the two devices consist of radically different combinations, and accomplish palpably diverse ends. 75 Fed. 294, reversed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

This was a suit in equity by Oscar Lublin against the Stewart, Howe & May Company and others for alleged infringement of a patent relating to dress stays. The circuit court dismissed the bill, holding that the patent was void for want of invention, in view of the Curtis patent, No. 243,519, for an improvement in the backs of corsets (75 Fed. 294), and complainant appealed.

C. E. Mitchell, for appellant.

Wm. A. Jenner, for appellees.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

DALLAS, Circuit Judge.    This was a suit in equity upon letters patent No. 440,246, dated November 11, 1890, issued to Morris P. Bray, for improvements in dress stays. The sole defense, at the outset, was that the defendants had an interest in the patent, which entitled them to manufacture under it; but subsequently, upon leave, the defendants, other than Morris P. Bray, by amendment of their answer, denied its validity. The ninth error assigned is that the court erred in allowing this amendment, and specifications 4 to 8 are to the effect that, even if its allowance were proper, yet its averment was one which, under the circumstances shown by the proofs, the defendants were estopped from making, and which, therefore, was erroneously entertained. But these matters need not now be considered. The conclusion which we have reached upon the main question renders it unnecessary to do so.

The learned judge did not enter into an examination of the title to the patent, but said, in his opinion, "that whatever title the defendants may have clearly was taken by them with knowledge, actual or implied, of the rights of the complainant," which he evidently regarded as paramount. The decree, however, contains no finding upon this subject, and no question concerning it is presented on this appeal.

The court below held the letters patent in suit to be invalid, and upon that ground dismissed the bill. The specifications, other than those which have been mentioned, challenge the correctness of this result, and we cannot sustain it. It was founded upon the supposition that Bray's improvement in dress stays was anticipated by patent No. 243,519, dated June 28, 1881, granted to Augustine B.

Curtis, for an improvement in corsets. To us, however, the two subject-matters seem to be essentially dissimilar. The respective inventors were dealing with plainly distinct problems. The difficulty which the one proposed to overcome was very different from that which the other desired to surmount. Their improvements were not both for use upon the same article or in the same way, and the means which they severally employed were not, in any admissible sense, identical. Curtis' invention, as he said in his specification, related "to an improvement in the backs of corsets; that is to say, in the section at each of the rear edges, and in which the eyelets are placed for lacing." The then-existing common practice was to introduce the eyelets (for lacing) so that the strain came entirely on the fabric. This was objectionable, and Curtis' improvement consisted of a notched stay, in the back section of the corset, introduced in a pocket at the rear edge, combined with a flexible stay at the side of the metal stay, and eyelets introduced through the fabric at the notches in the metal stay, and struck down around the respective notches, and onto the flexible stay, as shown in the drawings which accompanied his specification, of which the following is a reproduction:

With reference to these drawings, the specification states:

"(10) I first make a stay, A, of metal, and upon one edge cut a series of notches, a, corresponding to the position where the eyelets, E, are to be introduced. This stay is introduced into a pocket, B, at the edge of the corset; and in rear of the pocket, B, a second pocket, C, is formed, into which a cord or other flexible stay is introduced, and distant from the edge of the stay, A, less than the diameter of the eyelet, as seen in Fig. 1, where a portion of the outer fabric is cut away to show the stays, A and D, in their proper relative position. The fabric is perforated at the notches, a, in the metal stay, and at the side of the flexible stay, D. Then eyelets, E, introduced, and struck down onto the metal stay around the notches, and also onto the flexible stay, as seen in Fig. 2. The metal stay forms a support to take the strain of the eyelets, and, being unyielding, firmly retains the eyelets in their position. The flexible stay, D, gives a thickness at the opposite side of the eyelet corresponding to the metal stay, so that the eyelets will close firmly upon that edge."

Under the old plan, as Curtis informs us, the fabric soon yielded to the strain which was put upon it in lacing, and the eyelets, in consequence, were easily detached. This was the mischief he sought

to obviate, and which he says he did obviate. His eyelets were still, however, but the old lacing eyelets, and the better security or support of such eyelets was all that he had any thought of providing for, and was all he accomplished. Now, the invention of Bray relates, not to corsets, but to dress stays; and has for its object, not an improvement in means for lacing corsets, but in the security of the ends of the steels of twin dress stays to their outer covering, in such manner as to prevent the longitudinal displacement of the steel, and at the same time to leave the stay flexible throughout its entire length. He says:

"My present improvement has nothing to do with the construction of the dress stay proper, but pertains solely to the securing of the ends of the steels to the outer covering. I prefer to use the woven covering, having longitudinal pockets (shown in dotted lines), such as I have described in the aforesaid patent. At or near the ends of the twin steels, A, B, are circular complementary recesses, a, b. When the steels are within the covering, C, an eyelet, D, is inserted through the recesses and covering, and clamped, thus securing the steels in position within said covering. The eyelet fits the recesses snugly, so that there can be no displacement of the several parts of the stay. * * * Heretofore the main difficulty with twin stays has been owing to the longitudinal displacement of the steels for want of a proper fastening device; but my invention overcomes this difficulty, and at the same time leaves the stay flexible throughout its entire length. I claim: (1) In a dress stay composed of twin steels within a suitable covering, the combination of the steels having circular complementary recesses, with an eyelet secured to the covering through said recesses, substantially as shown and set forth."

Fig. 2.

The patent contains two claims, but only the first (above copied) is involved in this suit.

From the foregoing mere statement of the material portions of the two patents, it is manifest that they are not for the same, or substantially the same, thing. It is obvious that Bray was not concerned with the lacing of corsets, and quite as plainly, we think, does it appear that Curtis was not dealing with the two steels comprised in twin stays, and that he neither contemplated nor contrived any suitable means for avoiding their longitudinal displacement, while leaving the stay, as an entirety, flexible throughout. Both Curtis and Bray used the old eyelets, but in combinations which radically differ, and which were intended to, and do, accomplish palpably diverse ends. We do not find the two steels of the composite twin stay of Bray in the arrangement of Curtis, nor the metal stay and the flexible stay of Curtis in that of Bray; and it seems to us to be as clearly evident that the Curtis contrivance would not effect the object of Bray as that the Bray construction is utterly unsuited to the purpose of Curtis. In short, the two patents do not conflict. The earlier one would not be infringed by manufac-

turing under the later one, and, this being so, it follows that the former cannot be held to be an anticipation of the latter.

We have considered the Curtis patent with particularity, because upon its supposed effect the conclusion of the learned judge below was rested; but it is not necessary to further extend this opinion, for, apart from that patent, there is nothing in the record which, in our opinion, affords the slightest support to the decree. The patent in suit is for an improvement—in fact, as well as in name—upon the construction shown in Bray's prior patent of January 22, 1889 (No. 396,533); and therefore it was rightly issued, notwithstanding the fact that the patent for the first and inferior contrivance had previously been granted, and was outstanding. The decree is reversed.